Good morning, Your Honors. Jamie Tenereau appearing on behalf of Appellant Scottsdale Insurance Company. I'd like to reserve five minutes for rebuttal. You may, but you keep track of your own time. Certainly. Thank you. I think some predicate facts are in order to frame the legal issue before this Court. The insured is Priority Parking. Priority Parking offers parking spaces and valet services for the public. Priority Parking purchased a commercial general liability policy from Hudson Specialty, respondent. For an additional premium, Hudson Specialty amended, endorsed their policy to provide a separate coverage, and that was for errors and omissions for parking operations. Tragically, a patron was injured. She sued. Hudson Specialty, as the primary insurer, provided a defense without reservation. In order to attempt settlement, Scottsdale did make a demand on Hudson. Scottsdale viewed this case, the facts of the case. Counsel, we're having some trouble with the audio here. Sorry. I will try to speak up. Can you hear me Thank you. So Scottsdale demanded, made a demand onto Hudson that it contribute its two million aggregate liability limits towards settlement. Scottsdale's demand was based upon the loss falling in within two separate insuring agreements. The first insuring agreement in the Hudson policy is the Hudson Specialty's obligation to indemnify Priority Parking for bodily injury caused by, quote, an occurrence, close quote. And the term occurrence is defined in the policy as an accident in relevant part. Because Priority Parking had paid a separate premium for errors and omissions coverage, Scottsdale also argued and maintains that the loss also fell within that insuring agreement. That insuring agreement says that Hudson Specialty will indemnify Priority Parking for damages because of any negligent act, error, or omission during the policy period arising out of parking operations. Hudson disagreed. They contributed a million. Scottsdale paid the rest to settle the matter, among some other insurers, and has now sought surrogation from Hudson Specialty in this matter. In the court below, Hudson argued that its endorsement situated errors and omissions coverage A for bodily injury caused by an occurrence. Hudson then said that its policy contains what it argues is a conspicuous limitation. It's Section 3, limits of insurance, subsection 5. That section provides that the most, the one occurrence limit is the most we, Hudson Specialty, will pay for the sum of damages under coverage A. It is our understanding that in relevant part, the district court agreed with that argument. However, that argument is in error because Section 5 has a qualification to it. In full, it provides that each occurrence limit is the most Hudson Specialty will pay for the sum of damages under coverage A, and then it goes on to state, because of bodily injury arising out of any one, quote, occurrence, close quote, the defined term, occurrence. The district court, we believe, said that because errors and omissions coverage came under coverage A, then he was going to apply the per occurrence limit and that's what happened. Scottsdale brought to the court's attention that the term occurrence is defined. It means an accident. So subsection 5 limited its limiting qualifications to coverage A for bodily injury caused by an occurrence. However, the separate insuring agreement did not use the word occurrence. It was not predicated on the word occurrence. Nowhere in the form can you find the word occurrence. Therefore, we maintained that the aggregate limit did apply because Hudson Specialty's declarations page differentiates its liability limits in sections. There is a 1 million liability limit for general liability for bodily injury by an occurrence, and then there is a separate section with a liability limit for errors and omissions coverage per claim. Counsel, if I could ask you two questions. One is, am I correct that we have to interpret the insurance policy as a whole? That is the policy language plus the endorsement language? Yes, Your Honor. Under California law, the policy must be interpreted as a whole. Correct. That would include the endorsement. Then the related question is, if there's a conflict between the policy language and the declaration page, what controls there? Sure. First, I don't believe there is a conflict because the declaration page does say that there is a separate section, and the section on which Hudson relies to limit its obligation does not address the predicate offense, which is any negligent act, error, or omission. I think you need to read the declarations page and the other provisions jointly to try to interpret and understand what the intent is. But subsection 5 doesn't address the situation. It just doesn't apply. It applies for an injury that comes with in the bodily injury caused by an occurrence insuring provision, but it is silent with regards to the separate insuring provision for a negligent act, error, or omission. That is why it is Scottsdale's position, and has been, that subsection 2 is the appropriate section that the district court should have applied. Subsection 2 says the general aggregate limit is the most we, Hudson Specialty, will pay for the sum of damages under coverage A, without a further qualification. So in the larger picture, yes, Justice Gould? I was going to say thank you. I think you covered my question. Counsel, let me ask a question. Your opponent seems to suggest that the distinction to be made here is that the errors and errors are not expressly made to be a claims-made coverage, and that makes all the difference here. Can you explain that? I can, and I do believe the court below adopted this argument. And really, I think it's a conflation between occurrence coverage as a general proposition and the defined term occurrence as used in the Hudson Specialty policy. So there is a concept of trigger of coverage under California law that the Supreme Court in Montrose has rejected. And policies are generally characterized between what are claims-made policies and occurrence policies. A claims-made policy requires that the claim be made during the policy's period, the period that it is in effect. Contrary to that are what we generally call occurrence policies. It is not the claim being made that triggers the insurer's obligation. It is rather a subset of other conditions. It could be the injury, bodily injury or property damage that has to occur during the policy period. It could be the accident that has to occur during the policy period. It could be both. So as I understand it, this policy has components of both, right? There is a component for employer's liability coverage that is a claims-made insuring agreement, as the industry would understand it. Correct. As I understood it, your opponent and I think the district court made the distinction that where the policy purports to make a claims-made basis for coverage, it does so expressly. It didn't do so in the errors and omission portion of the policy. And therefore, that's why you're not entitled to the additional $1 million in coverage. What's your response to that? Thank you. This is the response. It is not a claims-made. It's not. It does not require the following of a claim during Hudson Specialty's policy period. But what the Supreme Court has said is courts cannot rely on this trigger of coverage concept to decide limits or other provisions. The courts actually have to examine the words used themselves. And the words used in the errors and omissions insuring agreement is any negligent act, error or omission. So the only way that you can say a per-occurrence limit applies, one limit applies, is to equate a defined occurrence, accident, with negligent act, error or omission. Under California law, those are not equal propositions. And I think it is relevant that when deposed, Hudson Specialty's person most qualified, James Brogan, testified that on the basis of the declarations page, per-occurrence refers to the defined term occurrence. And he referred the questioning attorney to page 14 under the general policy pages. And he said that errors and omissions coverage was a distinct and separate risk from the general liability coverage. So he himself made the distinction between the two. Counsel, if I could interject a practical question, and this may be totally off-base on the law, so you can tell me if it is. But as I recall, the overall premium on the policy initially was something in the range of $140,000, with the $1 million limit of liability and coverage in it. And then when this endorsement for the garage was obtained, there was an extra premium for that of something like $400. And it brought, some of the language says it's bringing the coverage under coverage A, which would sort of fit with the $1 million limit. But what I'm trying to understand is how could a $400 coverage endorsement justify a doubling of the limit of liability? Your Honor, you raise an excellent question, and I've given it a lot of thought. And I pose the question in response, and I will provide an answer. The question sort of assumes its conclusion, because I've looked at the record on appeal and the evidence submitted by Hudson Specialty. And I want to ask what substantiates their argument that $450 premium wasn't sufficient under their ratings to obtain another million in insurance? And what I would bring to the Court's attention, and I believe Justice Diaz mentioned that the policy includes also employer's liability coverage. The premium, and it's a limit of $1 million, Your Honor, the premium that they paid for that extra coverage was also $450. The policy also includes damage to rented premises coverage. That provides a separate $1 million liability limit as well, and I believe the premium for that was $750. So this argument that $450 doesn't buy you a million in coverage is, as I see it, just that, an argument of counsel. It is predicated on one submission, a declaration by James Brogan. We have objected to that declaration. The district court said that it did not rule on our objections and did not rely on the declaration when it made its decision. But Mr. Brogan has no personal experience. He has no personal knowledge. He did not create this policy. He did not create or implement or market this program. This program was created four years prior. He was not employed at Hudson Specialty at the time. It was created by a third party, I'll term them vendor, but program manager, and they pitched it to Hudson Specialty for permission to use their paper to underwrite it. Hudson Specialty bought it wholesale. They had nothing to do with the ratings. So I can appreciate the practical argument. However, I don't think it holds water under the specific evidence of the case and the language of the policy. And if you look at the ratings, and if you want the evidence record, I can provide that to you on the website, but I can't give you the exact numbers. I can only give you the general liability coverage, which is rated on a completely different basis. It's rated on thousands of spaces of parking than are the employee's benefits and the errors in admissions coverage. They are rated on an employee basis. I think you've answered the question. You're now eating into your rebuttal time. Thank you. Good morning, Your Honors. Steve Ellingson on behalf of Hudson. May it please the Court. The district court, I believe, resolved this case correctly under the four corners of the agreement. And I really believe and would urge this Court, it's this simple. There's an equation of occurrence coverage and the per-event coverage under the parking E&O that has nothing to do with claims made coverage, which is completely distinct, a completely different trigger, which you can see under the employee benefit liability coverage. Now, the single-event nature, whether it's called an occurrence or a negligent act, that's the trigger of coverage. That has nothing to do with when the claim is made. And the Court can look at that on the four corners of the policy and not go to the extrinsic evidence. And we're done, because there's no dispute. There's a single limit under coverage A. It's a million dollars. Hudson paid a million dollars. We're done. But if we're going to... But if we're going to go beyond the four corners of the agreement and get into the extrinsic evidence, guess what? This is all confirmed. Because if you look at, Your Honors, the Alliant summary of coverage, the application to Scottsdale, Scottsdale's CGL policy, all of those show that they're not considering the parking E&O as a separate coverage worth a million bucks. I would take questions. Any questions? No questions here. No questions. Thank you. Thank you. I'll give you a minute on rebuttal. Thank you, Your Honors. Two quick rebuttal points. I'm going to start with the first. Counselor Hudson's specialty said, quote, a single event, whether it be an occurrence or a negligent act or remission. That is the same fallacy that he, Hudson's specialty, presented to the district court that they bought. Their own person most qualified said that those terms are not interchangeable. They want this court to disregard the language of their policy and make them interchangeable. My second point is the application does not matter. Why aren't they interchangeable? Why? Because occurrence is a defined term as an accident, and negligent act or remission is a professional liability concept, and they are legally based differently. Yes? Go ahead. My other one was, the application, they want this court to draw the inference that because the box was not checked on errors and remission, that it wasn't rated as a separate risk. That is not true. The relevant piece of evidence is their quote that the insured saw. Their quote does rate it separately. And their quote says that what we are providing you may not be the same as requested in the application.  And their own person most qualified said that it was separately rated. Thank you. Counsel, the case just argued is ordered submitted. The last case on the calendar, Gianangelo v. the Treasury Inspector General for Tax Administration, has been submitted on the briefs. So that concludes the court's calendar for this morning, and the court stands adjourned.
judges: Diaz, Schroeder, Gould